UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CYNTHIA ROSEBERRY-ANDREWS,<br><br>*Plaintiff*<br><br>v.<br><br>JEH JOHNSON, Secretary, United States Department of Homeland Security,<br><br>*Defendant* | Case 1:16-cv-00063-KBJ |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Cynthia Roseberry-Andrews, a former employee of the Immigration and Customs Enforcement ("ICE") FOIA Office, submitted a Freedom of Information Act ("FOIA") request to ICE seeking records about her former employment. ICE searched everywhere likely to contain responsive records and the Department of Homeland Security ("DHS") processed and released found responsive records to Plaintiff. It withheld, however, some information under FOIA Exemptions 5, 6, 7(C), and 7(E). These withholdings were applied judiciously and appropriately, with all reasonably segregable information released. ICE has therefore complied with its obligations under FOIA, and the Court should enter summary judgment in its favor. In addition, Plaintiff has sued an improper party.

## BACKGROUND

The following provides a summary of the facts more fully described in the Statement of Material Facts as to Which There Is No Genuine Issue.

Plaintiff submitted her FOIA request to ICE on December 29, 2014, and the agency acknowledged it a few days later on December 31. [SUMF ¶¶ 4–5.] Plaintiff is a former employee

of the ICE FOIA Office, and her request sought records about her former employment. [SUMF ¶ 4.] After nearly a year with no further response from ICE, Plaintiff filed an administrative appeal on November 13, 2015. [SUMF ¶ 6.] On December 21, 2015, Plaintiff's appeal was remanded to the ICE FOIA Office for it to finish processing Plaintiff's request. [SUMF ¶ 8.] In the meantime, Plaintiff field this action on January 13, 2016. [SUMF ¶ 9.]

When it received Plaintiff's FOIA request in December 2014, the ICE FOIA Office determined that responsive records were likely to be found in seven different offices and instructed each of them to conduct a comprehensive search for responsive records and provide them to the ICE FOIA Office. [SUMF ¶ 14.] Each of the seven offices searched for responsive records, and all but one located some. Records from each of those offices were sent to the ICE FOIA Office for processing and release to Plaintiff. [SUMF ¶¶ 15–28.] Because the ICE FOIA Office was itself a subject of the request, the DHS FOIA Office processed all of the records to avoid any appearance of bias. [SUMF ¶ 30.]

On July 1, 2016, the DHS FOIA Office produced 1,826 pages of responsive documents to Plaintiff, with some redactions and withholdings. [SUMF ¶ 31.] Subsequently, it was determined that some of the documents were erroneously released without their redactions. [SUMF ¶ 32.] The same 1,826 pages of records were therefore reprocessed and rereleased in full with some additional redactions on August 16, 2016. [*Id.*] During the course of preparing its *Vaughn* index in support of this motion, Defendant determined that some redactions should be removed. Defendant will therefore soon send Plaintiff another replacement production with some additional information released. The final release contains 601 pages that withheld in full and 867 that are subject to partial redactions pursuant to FOIA exemptions. [SUMF ¶ 33.] Plaintiff has provided Defendant

with a list of redactions and withholdings that she does not dispute; this brief addresses only the remainder.

## STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *See McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the

3

record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs . Inc. v S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008).

## ARGUMENT

ICE conducted a thorough search, released responsive records, and appropriately applied Exemptions 5, 6, 7(C), and 7(E) to withhold only non-segregable information. Plaintiff's FOIA claim is therefore moot and Defendant is entitled to summary judgment. In addition, Plaintiff has sued an improper party.

### I. ICE Conducted Adequate Searches.

ICE fulfilled its obligation to search for records responsive to Plaintiffs' FOIA request. Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see also Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 n.13 (D.C. Cir.

4

1990) (rejecting an argument that a search was inadequate because it did not uncover "documents that [plaintiff] claims must exist"); *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). The declaration on which an agency's showing of reasonableness is based need not "set forth with meticulous documentation the details of an epic search for the requested records;" it must only "explain in reasonable detail the scope and method of the search conducted by the agency." *Perry*, 684 F.2d at 127.

Here, the ICE FOIA Office analyzed the substance of Plaintiff's request and determined that there were seven offices reasonably likely to have responsive records. [SUMF ¶ 14.] Each one of those offices was tasked by the ICE FOIA Office with conducting a search, and each of them diligently complied as described in the declaration of Fernando Pineiro. [SUMF ¶¶ 14–28.] Further, all but one of the seven offices located responsive records (the other one searched but found nothing), which were reviewed by the DHS FOIA Office to remove any nonsegregable exempt information and then released to Plaintiff. [*Id.*] Consequently, ICE fulfilled its obligation to conduct a search "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

## II.     ICE Properly Withheld Some Information Pursuant to FOIA Exemptions.

FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the Act's nine exemptions. *See* 5 U.S.C. § 552(b); *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions. 5 U.S.C. § 552(a)(4)(B); *see also Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

ICE properly and judiciously applied Exemptions 5, 6, 7(C), and 7(E) to withhold certain documents and information from release. Defendant describes each of the relevant exemptions and the bases for their application below.

### A. Exemption 5 (Privileged Information)

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Intern. Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001). ICE withheld information under all three of those privileges.

#### 1. Attorney-Client Privilege

The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The privilege also protects communications from attorneys to their clients that "'rest on confidential information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)); *see also Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977). In the FOIA context, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of attorney-client privilege. *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998) (citing *Coastal States*, 617 F.2d at 863).

As explained in the declaration of Kevin Tyrrell and the accompanying *Vaughn* index [Tyrrell Decl. ¶¶ 27–28 & Ex. G, *Vaughn* Index], ICE redacted privileged information from certain emails wherein agency representatives consulted with the agency's attorneys regarding Plaintiff's request for reasonable accommodation, her EEO complaint, her performance appraisal, and her termination. In addition, ICE redacted legal opinions that its attorney's provided to supervisors in the Office of Diversity and Civil Rights and the ICE FOIA Office regarding the requirements of the Americans with Disabilities Act and regulations governing probationary periods for federal employees. [Tyrrell Decl. ¶ 27.] Such communications between the agency and its attorneys are plainly covered by the attorney-client privilege and disclosing them would have a chilling effect on the agency's confidence in seeking candid legal advice [Tyrell Decl. ¶ 28], which is precisely what the attorney-client privilege is intended to protect, *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (noting that "sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client"). For these reasons, ICE has properly invoked Exemption 5 to withhold attorney-client privileged information.

### 2. Work Product Privilege

The attorney work-product privilege applies to materials prepared in anticipation of litigation. *See Tax Analysts*, 117 F. 3d at 620. The privilege is "relatively broad and encompasses documents prepared for litigation that is 'foreseeable,' if not necessarily imminent." *Am. Immigration Council v. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60, 78 (D.D.C. 2014); *see also Am. Immigration Council v. Dept. of Homeland Sec.*, 21 F. Supp. 3d at 78–79 (finding that ICE properly withheld handwritten notes written by ICE attorney that discussed details of specific cases involving non-citizens).

As explained in the declaration of Kevin Tyrrell and the accompanying *Vaughn* index [Tyrrell Decl. ¶ 29 & Ex. G, *Vaughn* Index], ICE withheld email communications and documents that were drafted to assist ICE attorneys in litigating and managing individual cases. [Tyrrell Decl. ¶ 29.] Such documents are covered by the work-product doctrine and the agency properly withheld them.

### 3.     Deliberative Process Privilege

The deliberative-process privilege protects intra- or inter-agency documents that are "both pre-decisional and deliberative," *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993), by protecting "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated,'" *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). Documents "reflecting . . . deliberations comprising part of a process by which governmental decisions . . . are formulated" are deliberative. *Sears*, 421 U.S. at 150 (quotation omitted). Deliberative material "make[s] recommendations for policy change []or reflect[s] internal deliberations on the advisability of any particular course of action." *Public Citizen v.OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010).

Exemption 5 "was intended to protect not simply deliberative *material*, but also the deliberative *process* of agencies." *Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) (emphasis added). For that reason, even factual material is exempt under Exemption 5 if disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (citing *Dudman Comm. Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)). "There

should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions . . . .'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151; *Vaughn*, 523 F.2d at 1144).

As explained in the declaration of Kevin Tyrrell and the accompanying *Vaughn* index [Tyrrell Decl. ¶¶ 25–26 & Ex. G, *Vaughn* Index], ICE withheld internal, predecisional discussions regarding the ongoing investigation and future adjudication of Plaintiff's workplace grievances as well as internal, predecisional discussions regarding the application of ICE policy to potential personnel actions that had been proposed by supervisors. [Tyrrell Decl. ¶ 25.] Such discussions are covered by the deliberative process privilege. *See Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 208 (D.C. Cir. 1990) (holding that predecisional documents discussing personnel actions that had not been committed were covered by the deliberative-process privilege and exempt from disclosure under FOIA).

In addition, ICE withheld certain documents that were in draft format. [Tyrrell Decl. ¶ 26.] By their very nature, draft documents are predecisional in nature and are covered by the deliberative-process privilege. *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F. Supp. 3d 120, 129–30 (D.D.C. 2016), *modified*, No. 14-CV-01806 (APM), 2016 WL 2642961 (D.D.C. May 9, 2016) ("[C]ourts in this District have held, in many instances, that drafts are protected by the deliberative process privilege.") (citing cases).

Further, DHS has determined that the disclosure of any of the information withheld under the deliberative-process privilege would harm ICE. For one thing, ICE depends on the ability of its staff to provide decision-makers with frank opinions and ideas regarding proposed agency

actions. The threat of public disclosure of such predecisional discussions would chill the candor of ICE employees and negatively impact the agency's ability to make well-advised decisions. [Tyrrell Decl. ¶¶ 25–26.] With respect to the draft documents, in addition to the chilling effect just described, their disclosure would also cause harm because it would likely result in public confusion where the text of a draft conflicts (sometimes significantly) from the agency's final positon. [*Id.*]

For these reasons, ICE properly applied the deliberative-process privilege to withhold information under Exemption 5.

### B.     Exemption 6 (Personal-Privacy Information)

Exemption 6 serves to protect personal privacy, permitting an agency to withhold ''personnel and medical files and similar files the disclosure of which would clearly constitute an unwarranted invasion of personal privacy.'' 5 U.S.C. § 552(b)(6). The term ''similar files'' is interpreted broadly, covering all "Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 595, 602 (1982); *see also Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").

If the threshold requirement of ''personnel and medical files and similar files'' is met, the Court must weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 47. If the requesting party cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because ''something, even a modest privacy interest, outweighs nothing every time.'' *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C.Cir.1989). Congress did not intend the

FOIA to facilitate "disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772–73 (1989) (quotations omitted). Thus, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Reporters Comm.*, 489 U.S. at 773). In the absence of any identified public interest of the sort the FOIA was intended to serve, the Court's inquiry must end, and the exemption must be upheld. *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

As explained in the declaration of Kevin Tyrrell and the accompanying *Vaughn* index [Tyrrell Decl. ¶¶ 30–33 & Ex. G, *Vaughn* Index], ICE withheld the names, telephone numbers, email addresses, work locations, and other personally identifiable information for non-leadership, lower-level ICE employees; and it also withheld the names signatures, and home addresses for other individuals and third parties (such as family members and contractors). [Tyrell Decl. ¶ 31.] The disclosure of such information could subject government employees and third parties to unwanted communications and public attention. [Tyrrell Decl. ¶¶ 32–33.] On the other hand, the public interest in the disclosure of such information is nonexistent because it will in no way advance an understanding of the functions of government. *See Nat'l Ass'n of Home Builders*, 309 F.3d at 34. For these reasons, Courts in this district have held that names, telephone numbers, and other identifying information is exempt from disclosure under Exemption 6. *See Shapiro v. Dep't of Justice*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014) ("Information protected under Exemption 6

11

includes such items as a person's name, address, place of birth, employment history, and telephone number."). Consequently, ICE properly withheld information under Exemption 6.

### C. Exemption 7 (Law Enforcement Information)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of six specified harms. 5 U.S.C. § 522(b)(7). ICE invokes two of those harms: (1) an unwanted invasion of personal privacy under 7(C) and (2) disclosure of law-enforcement techniques and procedures under 7(E). Each is discussed in below, following Defendant's threshold demonstration that Exemption 7 applies.

#### 1. The Exemption 7 Threshold

For Exemption 7 to apply, an agency must demonstrate that the records it withheld were compiled for law-enforcement purposes. *See FBI v. Abramson*, 456 U.S. 615, 622 (1982). Courts give great deference to a "criminal law enforcement agency[s']" assertion that its records were for law-enforcement purposes because government agencies "typically go about their intended business." *Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982). In light of that deference, the D.C. Circuit has opined that an agency need only show that the nexus between the agency's activity and its law-enforcement duties "must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (quoting *Pratt*, 673 F.2d at 421); *see also Tax Analysts v. I.R.S.*, 294 F.3d 71, 79 (D.C. Cir. 2002) (noting that the Exemption 7 threshold may be satisfied even where the records in question do not relate to a particular investigation).

ICE is plainly a law-enforcement agency that is owed deference under *Pratt*. Its parent agency, the Department of Homeland Security is charged with the administration and enforcement

12

of laws related to immigration and naturalization. 8 U.S.C. § 1103. ICE was created as a component of DHS in 2003 through a merger of investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service. [Tyrrell Decl. ¶ 35.] ICE is currently the largest investigative arm of DHS and the second-largest investigative agency in the whole of the federal government. [*Id.*] It is responsible for enforcing the nation's immigration law and identifying and eliminating vulnerabilities within the nation's borders. [*Id.*] *See also Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 15 (D.D.C. 2009) (holding that ICE is a law enforcement agency for purposes of Exemption 7).

All of the ICE records that are the subject of withholdings under Exemption 7 in this case originate from offices that are responsible for management and administration functions in support of ICE's operations. [Tyrrell Decl. ¶ 36.] Those offices guide the activities of the agency's law-enforcement personnel and manage the interface of the agency with the public. [Tyrrell Decl. ¶¶ 36–37.] As such, they are critical components of ICE's law enforcement mission and their records are subject to Exemption 7. [*Id.*]

### 2. Exemption 7(C) (Invasion of Personal Privacy)

Exemption 7(C) allows agencies to withhold information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This exemption is similar to Exemption 6, but broader in scope. Unlike Exemption 6, Exemption 7(C) does not feature the word "clearly," thereby easing the burden on the agency. *Cong. News Syndicate v. DOJ*, 438 F. Supp. 538, 541 (D.D.C. 1977). Further, the Freedom of Information Reform Act of 1986 lowered the risk-of-harm standard from "would" to "reasonably be expected to" result in harm, further easing the standard for evaluating

a potential privacy invasion. *See Stone v. FBI*, 727 F. Supp. 662, 665 (D.D.C. 1990), *aff'd*, No. 90-5065 (D.C. Cir. Sept. 14, 1990).

Here, ICE withheld the names and other personally identifying information of employees that perform tasks related to ICE's enforcement of federal immigration law. [Tyrrell Decl ¶ 39.] The employees at issue oversee law enforcement personnel and their personnel records and manage the disclosure of information related to investigation of individuals who may be unlawfully present in the United States. [*Id.*] These employees were and are in positions of access to sensitive law-enforcement information and the disclosure of their personal information may result in them being targeted by persons attempting to obtain such information. [*Id.*] Courts in similar circumstances routinely uphold the redaction of the names and contact information of "law enforcement officers, support personnel, and other employees" of law enforcement agencies because the release of such information could subject them to harassment. *See Conception v. FBI*, 606 F. Supp. 2d 14, 39 (D.D.C. 2009). For these reasons, ICE properly withheld information under Exemption 7(C).

### 3.     Exemption 7(E) (Techniques and Procedures)

Under Exemption 7(E), agencies may withhold information "which would disclose techniques and procedures for law enforcement investigation or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This exemption applies broadly and allows agencies to withhold information that "would provide insight into its investigatory or procedural techniques." *Techserve Alliance*, 803 F. Supp. 2d 16, 28–29 (D.D.C. 2011); *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting that Exemption 7(E) offers "a relatively low bar for the agency to justify withholding" information).

Here, ICE withheld internal resource-location addresses ("URLs") and case numbers. [Tyrrell Decl. ¶ 41.] Those addresses and numbers contain codes and sequences that reflect the type of activity under investigation, the location of a case or investigative effort, and the scope and size of an investigation. [Tyrrell Decl. ¶ 42.] ICE techniques and procedures for formulating URLs and case files is not widely known and its revelation may allow persons seeking to circumvent the law to take proactive steps to counter operational and investigative actions. [*Id.*] Courts have upheld the redaction of similar information in other cases. *See, e.g., Skinner v. DOJ*, 893 F.Supp.2d 109, 114 (D.D.C.2012) ("The Court concludes that the USCIS's decision to redact the TECS access codes is appropriate under Exemption 7(E)."), *aff'd sub nom., Skinner v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 12–5319, 2013 WL 3367431 (D.C. Cir. May 31, 2013); *McRae v. DOJ*, 869 F.Supp.2d 151, 169 (D.D.C. 2012) (finding Exemption 7(E) properly applied to information from TECS and NCIC databases). ICE therefore properly invoked Exemption 7(E).

### III. ICE Released All Reasonably Segregable Information.

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, as demonstrated by the declaration of Kevin Tyrrell and the *Vaughn* index attached to it, the DHS FOIA Office examined and processed all of the records responsive to Plaintiff's request. Where exempt information was reasonably segregable from nonexempt information, it redacted only the exempt information and produced the rest. [Tyrrell Decl. ¶¶ 43–46 & Ex. G, *Vaughn* Index.]

## IV. The Secretary of Homeland Security Is an Improper Defendant.

Finally, Defendant notes that Plaintiff has sued an improper party. Only federal agencies may be sued under FOIA. *See* 5 U.S.C. § 552(a)(4)(B) (granting district courts "jurisdiction to enjoin the agency from withholding agency records improperly withheld from complainant"); *id.* § 552 (f)(1) (defining "agency"). The head of an agency is not a proper party and the Court has no jurisdiction to enjoin him or her under FOIA. *See Santini v. Taylor*, 555 F. Supp. 2d 181, 184 (D.D.C. 2008) (dismissing FOIA complaint for lack of subject matter jurisdiction because plaintiff named government employees as defendants, rather than agency). Here, Plaintiff in her initial complaint named only Catrina Pavlik-Keenan, the ICE FOIA Officer, as the defendant. [Compl., ECF No. 1.] In its answer, Defendant stated as a defense that "Plaintiff brought this action against an improper party because Catrina Pavlik-Keenan is not an agency of the government." [Answer at 4, ECF No. 13.] Apparently in response to that, Plaintiff amended her complaint to name a new defendant, but not one that cured the defect. She substituted Ms. Pavlik-Keenan for Secretary Jeh Johnson [Am. Comp., ECF No. 14], who is still not an agency of the government. Consequently, Plaintiff's complaint remains defective and cannot be maintained against the named defendant.

\*   \*   \*

## CONCLUSION

For the reasons set forth in this memorandum and the accompanying statement of facts, declarations, and exhibits, Defendant respectfully requests that the Court enter judgment in its favor on all claims. A proposed order to that effect is filed herewith.

Dated: October 3, 2016

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/ Johnny Walker
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Counsel for Defendant*