# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CYNTHIA L. ROSEBERRY-ANDREWS,

       *Plaintiff*,

    v.

DEPARTMENT OF HOMELAND
SECURITY,

       *Defendant*.

Civil Action No. 16-63 (TJK)

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia L. Roseberry-Andrews, proceeding *pro se*, has filed suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking certain records from the Department of Homeland Security ("DHS" or "Defendant") regarding her employment with the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act Office (the "ICE FOIA Office"). Defendant has moved for summary judgment, arguing that it has conducted a reasonable search of its records and produced all responsive, non-exempt information. Roseberry-Andrews has cross-moved for summary judgment, alleging that Defendant did not conduct a proper search, was dilatory in responding, did not properly apply FOIA exemptions, and failed to comply with FOIA's "segregability" requirement. The Court agrees with Defendant on many of the issues raised by the parties, but ultimately concludes that Defendant has failed to provide sufficient evidence that the ICE FOIA Office conducted an adequate search or complied with FOIA's "segregability" requirement. Thus, Defendant's motion for summary judgment will be granted in part and denied in part, with leave granted to file a renewed motion within 60 days. Accordingly, the Court will reserve judgment in part and deny in part Roseberry-Andrews' cross-motion for summary judgment.

# I.     Background

## A.     Roseberry-Andrews' FOIA Request and Lawsuit

On December 29, 2014, Roseberry-Andrews filed a FOIA request with the ICE FOIA Office.  *See* ECF No. 1 ("Orig. Compl.") Ex. 1 at 8-9.[1]  The request sought information pertaining to her employment in that same ICE FOIA Office from eight different program offices within DHS.  *Id.* at 8.  Those offices were: (1) the Office of the Principal Legal Advisor ("OPLA"); (2) the ICE FOIA Office; (3) the ICE Privacy Office; (4) "HR [Human Resources]"; (5) "EEO [Equal Employment Opportunity]"; (6) "Reasonable Accommodation"; (7) the Office of Employee and Labor Relations ("ELR"); and (8) the Office of the Assistant Secretary ("OAS").  *Id.*[2]  Roseberry-Andrews also listed the names of individual employees in the ICE FOIA and ELR offices from whom she requested records.  *Id.*

That same day, ICE confirmed receipt of Roseberry-Andrews' FOIA request.  Orig. Compl. Ex. 1 at 11; ECF No. 14 ("Am. Compl.") ¶ 10.  On December 31, ICE followed up with a formal acknowledgment letter and assigned her request a case number.  Orig. Compl. Ex. 1 at 12-13; Am. Compl. ¶ 11; ECF. No. 22-1 ("Def.'s SoMF") at 2.  The acknowledgement letter also stated that, "[a]lthough ICE's goal is to respond within 20 business days of receipt of your request," FOIA permits, and ICE would invoke, a 10-day extension because Roseberry-Andrews' request "seeks numerous documents that will necessitate a thorough and wide-ranging search."  Orig. Compl. Ex. 1 at 12 (citing 5 U.S.C. § 552(a)(6)(B)).

---

[1] Citations to pages numbers in Roseberry-Andrews' filings refer to the page number generated by the ECF system at the top of the page.

[2] Human Resources, EEO, and Reasonable Accommodation were offices listed by Roseberry-Andrews in her FOIA request, but neither party has supplied the Court with the full names of these offices.

On November 13, 2015, having not heard or received anything further from the government, Roseberry-Andrews filed an administrative appeal. *Id.* at Ex. 2; Am. Compl. ¶ 11; Def.'s SoMF at 2. ICE received the appeal on the same day. Def.'s SoMF at 7. On December 21, 2015, ICE remanded the appeal to the ICE FOIA Office to complete processing of her FOIA request. *Id.* at 2.

On January 13, 2016, Roseberry-Andrews filed this lawsuit against Catrina Pavlik-Keenan, an ICE FOIA Officer. Orig. Compl. On April 20, 2016, she filed an amended complaint, replacing Pavlik-Keenan with Jeh Johnson, then the Secretary of DHS, as the defendant. Am. Compl. The amended complaint asserts that Roseberry-Andrews did not receive the records she seeks and requests wide-ranging relief, including damages, injunctive relief, declaratory relief, and attorney's fees. *Id.* at 20.

**B.      DHS's FOIA Productions**

Although the ICE FOIA Office collected responsive records from the various program offices, it was also a subject of Roseberry-Andrews' request. Therefore, to ensure objectivity in reviewing and processing the records, it handed over responsibility for these tasks to the DHS FOIA Office. Def.'s SoMF at 9-10. On July 1, 2016, Defendant produced 1,826 pages to Roseberry-Andrews. *Id.* at 10. On July 24, Plaintiff provided Defendant's counsel a list of redactions and withholdings that she did not dispute, which the parties agreed would not be included on Defendant's *Vaughn* Index during summary judgment briefing. *Id.* at 10.

After Defendant's production to Roseberry-Andrews, it discovered that some documents had been released without certain necessary redactions, and clawed the production back to include them. *Id.* On August 16, 2016, Defendant reproduced the same 1,826 pages to Roseberry-Andrews with additional redactions. *Id.* In October 2016, Defendant represented to Roseberry-Andrews that, during the course of preparing its *Vaughn* index, it determined that

some redactions should be removed and that it would provide her with a replacement release. *Id.*

Ultimately, of the 1,826 pages Defendant produced to Roseberry-Andrews, 601 pages were

withheld in full and 867 pages redacted. *Id.*

### C. The Parties' Cross-Motions for Summary Judgment

In October 2016, Defendant moved for summary judgment. *See* ECF No. 22; ECF No.

22-2 ("Def.'s MSJ Br."); ECF No. 27 ("Def.'s Reply"). In response, Roseberry-Andrews filed

an opposition to Defendant's motion for summary judgment and a cross-motion for summary

judgment. *See* ECF No. 24; ECF No. 25 ("Pl.'s Cross-Mot. Br.").

Defendant maintains that it conducted a proper FOIA search and that its redactions and

withholdings are proper. It has submitted a declaration from Fernando Pineiro, the Deputy FOIA

Officer of the ICE FOIA Office, describing its search. ECF No. 22-3 ("Pineiro Decl.") ¶ 1.

Pineiro explains that when the ICE FOIA Office receives a FOIA request, it "identif[ies] which

program offices, based on their experience and knowledge of ICE's program offices, within ICE

are reasonably likely to possess records responsive to that request, if any, and to initiate searches

within those program offices." *Id.* ¶ 19. Once the ICE FOIA Office has determined the

appropriate program offices for a particular FOIA request, it provides points of contact in each

component office with "a copy of the FOIA request and instructs them to conduct a search for

responsive records." *Id.* According to Pineiro, "[p]er the ICE FOIA Office's instructions, the

individuals and component offices are directed to conduct searches of their file systems,

including both paper files and electronic files, which in their judgment . . . would most likely be

the files to contain responsive documents." *Id.* Once these searches are complete, any

potentially responsive documents are sent to the ICE FOIA Office. *Id.*

In this case, the ICE FOIA Office instructed seven program offices to search for

responsive documents. *Id.* ¶ 24. Those seven offices included five that Roseberry-Andrews

asked to be searched (ELR, OPLA, Privacy, ICE FOIA, and OAS) and two that she did not ask

to be searched (the Office of Diversity and Civil Rights ("ODCR") and the Office of the Chief

Information Officer ("OCIO")). The search did not include three offices named in Roseberry-

Andrews' request (HR, EEO, and Reasonable Accommodation). *See* Orig. Compl. Ex. 1 at 8-9.

Pineiro's declaration identifies the search terms that five of the seven offices used for their

searches. Pineiro Decl. ¶¶ 33-35, 37-38. Those offices generally searched for terms that

included Roseberry-Andrews' name (*e.g.*, *id.* ¶ 37) or the names of the ICE employees identified

in the complaint (*e.g.*, *id.* ¶¶ 35, 38). All of the offices searched provided records that were

ultimately released to Roseberry-Andrews except OAS, which reportedly did not have any

responsive records. *Id.* ¶¶ 32-38.

Defendant also submitted a *Vaughn* index and a declaration from Kevin Tyrrell, the

Associate Director for FOIA Appeals and Litigation at the DHS FOIA Office. ECF No. 22-4

("Tyrrell Decl.") ¶ 1 & Ex. G ("*Vaughn* Index"). DHS withheld or redacted information

pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E). *See* Tyrrell Decl. ¶¶ 21-39 & *Vaughn* Index.

The *Vaughn* Index contains a document-by-document accounting of which exemptions were

applied and why.

Roseberry-Andrews' cross-motion for summary judgment can be difficult to follow, but,

as the Court reads it, she raises four principal arguments why Defendant allegedly failed to

comply with FOIA. First, she argues that DHS impermissibly delayed responding to her request.

*See* Pl.'s Cross-Mot. Br. at 6. Indeed, she argues both that DHS's delays were so severe that

they rise to the level of a "policy-or-practice" claim (*i.e.*, that DHS has established a policy or

practice of failing to comply with FOIA requests) and that DHS's delay violated her

constitutional right to due process because she needed the documents DHS produced in advance

of a court proceeding she asserts took place on August 29-30, 2016. *Id.* at 5-8. Second, she

argues that the ICE FOIA Office failed to conduct an adequate search because it "provided no

explanation of the nature of any search that it conducted." *Id.* at 12. Third, she contests many of

the agency's specific withholdings under certain FOIA exemptions. *Id.* at 8-12. And last,

Roseberry-Andrews alleges the agency failed to "[c]onduct a segregated . . . review of the

information withheld." *Id.* at 10.

## II.    Legal Standard

"Congress enacted the FOIA in order to 'pierce the veil of administrative secrecy and to

open agency action to the light of public scrutiny.'" *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C.

Cir. 2007) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)) (internal quotation

marks omitted). "FOIA 'mandates that an agency disclose records on request, unless they fall

within one of nine exemptions.'" *Elec. Privacy Info. Ctr. v. DHS* ("*EPIC*"), 777 F.3d 518, 522

(D.C. Cir. 2015) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton

v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). "Summary judgment is

appropriately granted when, viewing the evidence in the light most favorable to the non-movants

and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in

their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496

(D.C. Cir. 2016). "The evidence presented must show 'that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R.

Civ. P. 56(a)). "Where the nonmoving party is proceeding *pro se*, courts in this jurisdiction will

construe the non-moving party's filings liberally." *Cunningham v. DOJ*, 40 F. Supp. 3d 71, 82

(D.D.C. 2014), *aff'd*, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014). "However, a

*pro se* litigant still has the burden of establishing more than '[t]he mere existence of a scintilla of

evidence' in support of [her] position." *Id.* (first alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

"In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA." *MacLeod v. DHS*, No. 15-CV-1792 (KBJ), 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017) (citing 5 U.S.C. § 552(a)(4)(B)); *see also Cable News Network, Inc. v. FBI*, 271 F. Supp. 3d 108, 111 (D.D.C. 2017) ("Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden on the agency to sustain its action . . . ." (quoting *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989)) (internal quotation marks omitted)). Indeed, "consistent with D.C. Circuit precedent," judges in this Circuit have "proceeded to review the agencies' facts and evidence to determine whether summary judgment in favor of the agency defendants is warranted despite the lack of a coherent opposition from the plaintiff." *MacLeod*, 2017 WL 4220398, at *8. "[T]he Court may . . . treat the Department's factual proffers as conceded, but it must address the Department's legal arguments on their merits." *King v. DOJ*, 245 F. Supp. 3d 153, 158 (D.D.C. 2017) (citing *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016)), *reconsideration denied*, 2017 WL 5449803 (D.D.C. Nov. 10, 2017).

"To prevail on summary judgment [in a FOIA case], an 'agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,' which it can do by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were

searched.'" *Reporters Comm. for Freedom of Press v. FBI* ("*RCFP*"), 877 F.3d 399, 402 (D.C. Cir. 2017) (second alteration in original) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "The agency fails to meet this burden such that summary judgment is inappropriate when the agency fails to set forth the search terms and the type of search performed with specificity or otherwise provides 'no information about the search strategies of the [agency] components charged with responding to [a] FOIA request'" and "no indication of what each [component's] search specifically yielded." *Evans v. Fed. Bureau of Prisons*, No. CV 16-2274 (BAH), 2018 WL 707427, at *2 (D.D.C. Feb. 5, 2018) (quoting *RCFP*, 877 F.3d at 402 (alterations in original)) (internal quotation marks omitted). "At a bare minimum, the agency's affidavits need to specify 'what records were searched, by whom, and through what process.'" *Rodriguez v. DOD*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994)).

"In addition to demonstrating the adequacy of the search, the agency must 'demonstrate that the records have not been improperly withheld.'" *Evans*, 2018 WL 707427, at *3 (quoting *Ctr. for the Study of Servs. v. HHS*, 874 F.3d 287, 288 (D.C. Cir. 2017)). "The burden is on the agency to justify withholding the requested documents, and the FOIA directs district courts to determine de novo whether non-disclosure was permissible." *EPIC*, 777 F.3d at 522. "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). The agency cannot rely on "conclusory and generalized allegations of exemptions." *Morley*, 508

F.3d at 1114 (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. NSA*, 610 F.2d 824, 830 (D.C. Cir. 1979)).

FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The court has an affirmative duty to ensure that this requirement is satisfied, even if it must do so *sua sponte*. *See Morley*, 508 F.3d at 1123.

## III. Analysis

As described above, Roseberry-Andrews alleges that Defendant violated FOIA in a number of ways. Her complaints fall into four categories: Defendant (1) took too long to respond to her request, (2) did not perform an adequate search, (3) improperly claimed certain exemptions, and (4) failed to comply with FOIA's segregability requirement. The Court addresses each argument in turn.[3]

### A. Defendant's Delay

Roseberry-Andrews argues that DHS's delay in responding to her FOIA request gives rise to a cognizable legal claim. The Court cannot agree.

---

[3] In its brief, Defendant, in addition to defending its FOIA production, also argues that Roseberry-Andrews' case should be dismissed because only federal agencies may be sued under FOIA, and thus the head of an agency is an improper defendant. Def.'s MSJ Br. at 16. "While it is true that the FOIA authorizes a cause of action against federal agencies only, 'pleadings [in general] must be construed so as to do justice,' and *pro se* filings in particular must be construed liberally." *Schotz v. Samuels*, 72 F. Supp. 3d 81, 88 (D.D.C. 2014) (alteration in original) (citations omitted) (quoting Fed. R. Civ. P. 8(e)) (substituting DOJ for Director of Bureau of Prisons as defendant). Thus, the Court hereby substitutes the Department of Homeland Security as the real party of interest and dismisses the complaint against Secretary Johnson under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Consequently, Defendant's request to dismiss the case for lack of jurisdiction is denied.

### 1. Defendant's Failure to Meet FOIA Deadlines

Roseberry-Andrews' first argument is that "FOIA requests are required to be completed within twenty days of receipt." Pl.'s Cross-Mot. Br. at 6 (citing 5 U.S.C. § 552(a)(6)(A)(i)). But that is not what the statute says. 5 U.S.C. § 552(a)(6)(A)(i) only requires the agency to communicate its "determination" whether to comply with a FOIA request and "the reasons therefor" to a requestor within 20 days (or, in "unusual circumstances," 30 days, 5 U.S.C. § 552(a)(6)(B)(i)). It does not require the agency to complete processing the entire request within this period. *See Citizens for Responsibility & Ethics in Washington v. FEC* ("*CREW*"), 711 F.3d 180, 188 (D.C. Cir. 2013) ("To be clear, a 'determination' does not require actual *production* of the records to the requester at the exact same time that the 'determination' is communicated to the requester."); *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 10 (D.D.C. 2015) ("[T]he agency is plainly correct that FOIA does not require production of all responsive, non-exempt documents within twenty days of receiving a request."). Indeed, as the D.C. Circuit has noted, it would be a "practical impossibility for agencies to process all [FOIA] requests completely within twenty days." *CREW*, 711 F.3d at 189 (alteration in original).

Defendant does not contest that it did not comply with these explicit timeframes. Although it provided Roseberry-Andrews notice that her case involved unusual circumstances, Orig. Compl. Ex. 1 at 12, it does not present evidence that it ultimately communicated its "determination" and "the reasons therefor" within 30 days. *See* 5 U.S.C. § 552(a)(6)(B)(i). Where Roseberry-Andrews' argument fails, however, is that an agency's failure to comply with these statutory deadlines is not an independent basis for a claim. As the D.C. Circuit has explained, "if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *CREW*, 711 F.3d at 189; *see also Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 41

(D.D.C. 2014) ("Thus, far from EPIC's reading of the FOIA to require an agency to immediately hand over all of the requested documents as a result of its failure to meet the deadline, *CREW* makes clear that the impact of blowing the 20-day deadline relates *only to the requester's ability to get into court*.").  Thus, in this case, Defendant cannot—and did not—argue that Roseberry-Andrews failed to exhaust her administrative remedies.  But Defendant's failure to communicate its initial determination within 30 days does not provide Roseberry-Andrews a separate claim that it violated FOIA.[4]

### 2.    Defendant's Alleged Policy or Practice of Delay

In addition to the delay in her individual case, Roseberry-Andrews also argues that Defendant has a "policy or practice" of delaying responses to FOIA requests.  *See, e.g.*, Pl.'s Cross-Mot. Br. at 6 ("Defendant has established a pattern and practice of failing to comply with FOIA request processing time requirements . . . ."); *id.* at 7.

"The D.C. Circuit has . . . recognized that, separate from claims seeking relief for specific requests made under the FOIA, requesting parties may also assert a 'claim that an agency policy or practice will impair the party's lawful access to information in the future.'"  *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 252-53 (D.D.C. 2012) (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)).  "To state a policy-or-practice claim, a plaintiff must plausibly allege 'that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'"  *Am. Ctr. for Law & Justice v. U.S. Dep't of State* ("*ACLJ*"), 249 F. Supp. 3d 275, 281-82 (D.D.C. 2017) (quoting *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013)) (internal

---

[4] Roseberry-Andrews also asserts that DHS violated FOIA because it "processed over 104,000 FOIA requests after receiving Plaintiff's FOIA request."  Pl.'s Cross-Mot. Br. at 7.  It is not clear how Roseberry-Andrews calculated this number or on what basis she alleges it represents a violation of FOIA.

quotation marks omitted). "That FOIA policy or practice may be 'informal, rather than articulated in regulations or an official statement of policy.'" *Id.* (quoting *Payne*, 837 F.2d at 491). "Claims targeting agencies' internal FOIA workings usually also involve instances where conduct is 'sufficiently outrageous.'" *Id.* (quoting *Payne*, 837 F.2d at 494).

Here, Roseberry-Andrews' arguments about Defendant's delay in responding to FOIA requests are insufficient to state a policy or practice claim. She baldly asserts that DHS has a policy or practice of violating FOIA both because it fails to complete FOIA requests within twenty days and because it does not provide written notification of the "unusual circumstances" that underlie its decisions to extend the time to provide an initial determination. *See* Pl.'s Cross-Mot. Br. at 6-7. But Roseberry-Andrews "points to no fact or statement to establish *why* . . . requests were delayed or *how* the delays were the result of an either formal or informal DHS policy or practice to violate FOIA's requirements, rather than an inevitable but unintended delay attributable to a lack of resources." *Judicial Watch, Inc. v. DHS*, 211 F. Supp. 3d 143, 146 (D.D.C. 2016). Indeed, courts in this Circuit have repeatedly recognized that "a plaintiff 'cannot rest on the mere fact of delay alone to establish a [policy or practice] claim.'" *ACLJ*, 249 F. Supp. 3d at 283 (quoting *Judicial Watch*, 211 F. Supp. 3d at 146) (collecting cases); *see also Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 72 (D.D.C. 2016) ("[D]elay alone, even repeated delay, is not the type of illegal policy or practice that is actionable under *Payne Enterprises*."). Simply put, "[w]hile [Roseberry-Andrews] has shown that [DHS] is indeed slow, [she] has not plausibly alleged that the government subscribes to some policy or practice of

slow-walking its requests for information." *ACLJ*, 249 F. Supp. 3d at 278.  Thus, this argument fails.[5]

### 3. Defendant's Alleged Violation of Roseberry-Andrews' Due Process Rights

Roseberry-Andrews also suggests that her constitutional due process rights were violated because she did not receive records from Defendant in advance of a hearing that she asserts occurred on August 29-30, 2016.  *See* Pl.'s Cross-Mot. Br. at 5-8.

The Court disagrees.  As a factual matter, Roseberry-Andrews' argument fails because Defendant produced documents to her *before* the hearing in question.  DHS produced responsive documents to Roseberry-Andrews on July 1, 2016, and then again on August 16, 2016 (with additional redactions).  *See* Def.'s SoMF at 10.  Both of these productions occurred before August 29, 2016.  Thus, there was no due process deprivation.  After Roseberry-Andrews' hearing, while Defendant was preparing its *Vaughn* index, it did determine that some additional redactions could be removed, *id.*, but Roseberry-Andrews provides no basis to conclude that this later-released information was necessary for or even relevant to her hearing.

Moreover, even if Defendant had failed to provide documents to Roseberry-Andrews in advance of the hearing, her due process argument also fails as a matter of law because, as courts in this Circuit have concluded, "FOIA does not offer a remedy for alleged violations of constitutional rights arising from the handling of a FOIA request."  *Houser v. Church*, 271 F. Supp. 3d 197, 204 (D.D.C. 2017) (citing *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002)).  That principle holds even when the delay allegedly prejudiced the

---

[5] Roseberry-Andrews cites *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), at length in the context of delay.  Pl.'s Cross-Mot. Br. at 6-7.  But *Open America* addresses the circumstances under which "an agency is entitled to a stay" in FOIA litigation.  *Clemente v. FBI*, 71 F. Supp. 3d 262, 266 (D.D.C. 2014).  Here, DHS has already made its production, so a stay it not at issue.

plaintiff in some other proceeding. *Sanchez-Alanis v. Fed. Bureau of Prisons*, 270 F. Supp. 3d 215, 219 (D.D.C. 2017) ("Plaintiff also asserts that the delay violated his due process rights, but 'the comprehensiveness of FOIA . . . precludes the creation of a . . . remedy' predicated on a constitutional violation." (quoting *Johnson*, 310 F.3d at 777)).[6]

In light of the above, Roseberry-Andrews' cross-motion for summary judgment will be denied insofar as it alleges a FOIA violation grounded in Defendant's alleged delay.

### B.      Adequacy of Defendant's Search

To establish that it conducted an adequate search, Defendant "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested, which it can do by submitting [a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *RCFP*, 877 F.3d at 402 (alteration in original) (internal quotations marks omitted).

Roseberry-Andrews appears to suggest that Defendant did not perform an adequate search. *See* Pl.'s Cross-Mot. Br. at 12 ("To date the Defendant has provided no explanation of the nature of any search that it conducted for the requested records concerning the preparation of Plaintiff's FOIA request . . . ."). She does not explain, however, why the search was inadequate. Nevertheless, this Court "must address the [agency's] legal arguments on their merits." *King*, 245 F. Supp. 3d at 158. In order to carry its burden that it conducted an adequate search, Defendant must establish that it searched the proper offices and that the searches it did conduct were adequate. Defendant comes up short on both counts.

---

[6] Roseberry-Andrews cites *Wade v. Kirkland*, 118 F.3d 667 (9th Cir. 1997), to support her position, Pl.'s Cross-Mot. Br. at 7, but she provides no explanation about how this case—which involved an exception to the mootness doctrine for the purposes of a class-certification motion, *Wade*, 118 F.3d at 669—helps her argument.

### 1. Offices Searched

The Court concludes that Defendant has not provided an adequate explanation for the offices it searched.

"To prevail on summary judgment, . . . the defending 'agency must show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Morley*, 508 F.3d at 1114 (alteration in original) (quoting *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). It can do so by submitting a "reasonably detailed affidavit . . . averring that all files likely to contain responsive materials (if such records exist) were searched." *RCFP*, 877 F.3d at 402 (quoting *Oglesby*, 920 F.2d at 68).

In her FOIA request, Roseberry-Andrews requested information from eight program offices within ICE. *See* Orig. Compl. Ex. 1 at 8-9. Pineiro declared that the ICE FOIA Office "determined that because of the subject matter of the FOIA request, there were seven (7) offices reasonably likely to have records responsive to the Plaintiff's request." Pineiro Decl. ¶ 24; *see also id.* ¶¶ 32-38. Five of those offices (ELR, OPLA, Privacy, ICE FOIA Office, and OAS) were identified by Roseberry-Andrews. Orig. Compl. Ex. 1 at 8-9. It also searched two offices that Roseberry-Andrews did not identify: ODCR and OCIO. Pineiro Decl. ¶ 24. DHS did not search, as Roseberry-Andrews requested, Human Resources, EEO, or Reasonable Accommodation. *Id.*

The Court concludes that Defendant has not adequately justified its selection of the offices it searched. In particular, DHS has not explained why it chose not to search the three additional program offices that Roseberry-Andrews identified as having responsive records, which were, after all, records relating to her own employment. *See, e.g.*, *Rodriguez*, 236 F. Supp. 3d at 36-37 (concluding search unreasonable where agency did not search an office identified by plaintiff as likely to have responsive records). It may be that it is not likely these

program offices possess records related to Roseberry-Andrews' request; it is also possible that these offices were in fact searched as subcomponents of the other program offices. But "[t]he Court cannot fill in these gaps for the agency." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 154 (D.D.C. 2013); *see also Am. Immigration Council v. DHS*, 21 F. Supp. 3d 60, 72 (D.D.C. 2014) (denying summary judgment because "the Court cannot judge the merits of [plaintiff's] contention [that additional sub-offices should be searched] without knowing Defendants' position on whether any of those locations are likely to have responsive documents").

The need for Defendant to explain why it did not search the three additional offices identified by Roseberry-Andrews is underscored by the fact that Pineiro's declaration is also deficient insofar as it does not "aver[] that all files likely to contain responsive materials (if such records exist) were searched." *RCFP*, 877 F.3d at 402 (quoting *Oglesby*, 920 F.2d at 68). To be sure, Pineiro states that Defendant identified seven offices that were reasonably likely to have responsive records. Pineiro Decl. ¶ 24. But he does not specifically state that those were the *only* such offices, or that no other offices would likely have responsive records. *See Elkins v. FAA*, 103 F. Supp. 3d 122, 131 (D.D.C.) ("Nowhere in the FAA's declaration does [the declarant] aver that all files likely to contain responsive records were searched or that no other offices would likely contain responsive documents."), *on reconsideration*, 134 F. Supp. 3d 1 (D.D.C. 2015). Thus, in light of Roseberry-Andrews' specific request that Defendant search these three additional offices and Defendant's failure to explain why it did not do so, the Court denies Defendant's request for summary judgment as to the adequacy of its search.

## 2. Search Terms Employed

With regard to the program offices ICE did search, the Court concludes that Defendant's affidavits are also insufficient because they do not adequately describe the searches that Defendant conducted.

"A federal agency has discretion [to] craft[] a list of search terms that [it] believe[s] [is] reasonably tailored to uncover documents responsive to the FOIA request." *Coffey v. Bureau of Land Mgmt.*, 249 F. Supp. 3d 488, 498 (D.D.C. 2017) (alterations in original). But summary judgment is inappropriate "when the agency fails to set forth the search terms and the type of search performed with specificity or otherwise provides 'no information about the search strategies of the [agency] components charged with responding to [a] FOIA request.'" *Evans*, 2018 WL 707427, at *2 (quoting *RCFP*, 877 F.3d at 403 (alterations in original)) (internal quotation marks omitted). "Although a court should not second guess an agency with respect to its choice of reasonable search terms, it must nonetheless confirm that the agency's choice was *reasonably* calculated to lead to responsive documents." *Coffey*, 249 F. Supp. 3d at 498 (citation and internal quotation marks omitted).

Here, Pineiro's declaration fails in two respects: it does not provide the search terms that two of the offices used to search and it fails to explain why the other offices used inconsistent terms.

***Failure to Provide Search Terms***. Defendant failed to provide the search terms that two of the offices—ELR and OAS—used when conducting their search. *See* Pineiro Decl. ¶ 32 ("The administrative support staff searched ELR's paper files and internal shared drive."); *id.* ¶ 36 ("[OAS] searched the shared computer drive, and searched email records for records relating to the Plaintiff or the Plaintiff's employee complaints or personnel actions."). Without even knowing which search terms these offices used to search electronic files, the Court cannot

conclude that these searches were adequate.  *See DeBrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015) (concluding "declaration is not sufficiently detailed to support a summary judgment because it does not disclose the search terms used by the BoP and the type of search performed"); *Morley*, 508 F.3d at 1122 (rejecting affidavit that "merely identifies the three directorates that were responsible for finding responsive documents without 'identify[ing] the terms searched or explain[ing] how the search was conducted' in each component") (alterations in original) (quoting *Oglesby*, 920 F.2d at 68); *Walston v. DOD*, 238 F. Supp. 3d 57, 65 (D.D.C. 2017) ("Without a complete list of the search terms used in response to [plaintiff's] FOIA request, the Court is unable to conclude that [defendant's] search was adequate."); *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009) (rejecting a declaration that "simply states that searches were conducted" without providing search terms).  Indeed, courts in this Circuit have found similar declarations from Pineiro to be insufficient to warrant summary judgment.  *See, e.g.*, *Parker v. ICE*, 238 F. Supp. 3d 89, 104 (D.D.C. 2017) (denying summary judgment to ICE because declaration from Pineiro "provided insufficient detail" about the search terms and the "nature of that electronic search process"); *Tushnet v. ICE*, 246 F. Supp. 3d 422, 434-35 (D.D.C. 2017) (denying summary judgment to ICE because Pineiro declaration stating that offices had "full discretion to search their records" was inadequate).

    ***Failure to Explain Inconsistent Search Methodology.***  Defendant's description of its search methodology suffers from another flaw: it does not explain why different program offices used varying search terms.  In her FOIA request, Roseberry-Andrews identified the offices she wanted searched and listed individual employees in the ICE FOIA Office and ELR whose records she presumably believed contained relevant documents.  Orig. Compl. Ex. 1 at 8-9.  In their searches, some program officers searched the names of the ICE employees Roseberry-

Andrews identified. *See* Pineiro Decl. ¶ 35 ("OCIO searched archived e-mails by the names of specific former ICE employees identified in the FOIA request."); *id.* ¶ 38 ("The ICE FOIA Office manually searched its paper central file system by the names specified in the FOIA request.").[7] Other offices, however, only searched for Roseberry-Andrews' name. *See id.* ¶ 34 (ICE Privacy Officer "searched her computer hard drive and e-mail by the Plaintiff's name and complaint number"); *id.* ¶ 33 ("[T]he program office's internal shared computer drive was searched using the name of the applicable case manager and the name of the Plaintiff (employee who requested accommodations)."); *id.* ¶ 37 ("OPLA (the Deputy Chief and the OPLA attorney named in the request) searched an internal case management system, as well as OPLA shared drives by the Plaintiff's name.").

There may well be a good explanation for these inconsistent search methodologies, but Defendant does not provide it. As a result, these inconsistencies provide another reason that the Court cannot conclude that Defendant's search—or at least its description of that search—is sufficient to warrant summary judgment. *See Tushnet*, 246 F. Supp. 3d at 434-35 (denying summary judgment where ICE declarations "fall short of explaining why such disparate searches were reasonable for particular offices"); *James Madison Project v. Dep't of State*, 235 F. Supp. 3d 161, 169 (D.D.C. 2017) ("But the agency misses the point: the problem with the declaration in this case is that it is conclusory, and the searches are deficient because the agency—for no discernable reason—searched different data sets using different search terms . . . even within the same bureau or office. So the agency must do more to explain its methodology, and it must explain its reasoning more clearly.").

---

[7] The Court also notes that it is unclear why the ICE FOIA Office searched only paper files, and not any electronic files, for responsive records.

In light of these deficiencies as to the adequacy of its search, the Court will deny

Defendant's motion for summary judgment without prejudice, and allow it to file a renewed

motion for summary judgment within 60 days of the date of this Opinion.  In support of any such

motion, Defendant may either conduct additional searches to ensure that it adequately looked for

records responsive to Roseberry-Andrews' request or provide additional representations

describing the searches it has already conducted.  Accordingly, the Court also reserves judgment

on Roseberry-Andrews' cross-motion for summary judgment on this issue.

### C.    Exemptions Claimed by Defendant

Turning to the FOIA exemptions Defendant has invoked, "[t]he agency bears the burden

to establish the applicability of a claimed exemption to any records or portions of records it seeks

to withhold."  *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review* ("*AILA*"),

830 F.3d 667, 673 (D.C. Cir. 2016).  Indeed, FOIA exemptions "are 'explicitly made exclusive

and must be narrowly construed.'"  *Id.* (quoting *Milner*, 562 U.S. at 565).

In this case, DHS withheld some or all of responsive records pursuant to FOIA

exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  *See* Tyrrell Decl. ¶ 7.  Roseberry-Andrews

appears to challenge at least some of Defendant's withholdings under at least Exemptions (b)(5)

and (b)(7)(E), but does not contest withholdings pursuant to other exemptions.  Pl.'s Cross-Mot.

Br. at 8-12.  Nevertheless, "[t]he court is mindful that the plaintiff is a *pro se* litigant whose

pleadings and other submissions are construed liberally . . . [and] will address each of the

claimed exemptions below."  *Concepcion v. FBI*, 606 F. Supp. 2d 14, 27 (D.D.C. 2009).

### 1.    Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would

not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C.

§ 552(b)(5).  "This exemption 'has been interpreted as protecting against disclosure [of] those

documents normally privileged in the civil discovery context.'" *Judicial Watch, Inc. v. DOD*, 245 F. Supp. 3d 19, 27 (D.D.C. 2017) (alteration in original) (quoting *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1113 (D.C. Cir. 2004)). Exemption 5 "allows the government to withhold records from FOIA disclosure under at least three privileges: the deliberative-process privilege, the attorney-client privilege, and the attorney work-product privilege." *Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for U.S. Attorneys* ("*NACDL*"), 844 F.3d 246, 249 (D.C. Cir. 2016). In this case, DHS invokes all three of these privileges.

### a.    Attorney-Client Privilege

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Pub. Emps. for Envtl. Responsibility v. EPA*, 213 F. Supp. 3d 1, 22 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977)). "In the FOIA context, the agency is the 'client' and the agency's lawyers are the 'attorneys' for the purposes of attorney-client privilege." *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 802 F. Supp. 2d 185, 200 (D.D.C. 2011). "To be privileged, a communication must be 'for the purpose of securing *primarily* either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'" *Muttitt*, 926 F. Supp. 2d at 308-09 (quoting *In re Grand Jury*, 475 F.3d 1299, 1304 (D.C. Cir. 2007)). "The purpose of the privilege is to ensure that a client's confidences are protected, encouraging clients to be honest with their attorneys." *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 184 (D.D.C. 2017).

Under the attorney-client privilege, DHS withheld emails between agency employees and agency attorneys regarding Roseberry-Andrews' employment and an EEO complaint. Def.'s MSJ Br. at 7 (citing Tyrrell Decl. ¶ 27). DHS also redacted legal opinions provided by its attorneys regarding the requirements of the Americans with Disabilities Act and federal

regulations regarding probationary periods. *Id.* Roseberry-Andrews claims that there is no attorney-client privilege because "the termination was completed" and there was no pending litigation but only "EEOC disclosure." Pl.'s Cross-Mot. Br. at 10.

The Court concludes that DHS properly withheld materials pursuant to the attorney-client privilege under Exemption 5. The information withheld involves communications with agency attorneys regarding compliance with employment laws and legal advice from attorneys about the requirements of certain federal statutes and regulations. Such information is covered by the attorney-client privilege. *See, e.g.*, *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 231 (D.D.C. 2017) ("[C]onfidential disclosures between an attorney and her client regarding factual and legal matters are certainly protected by attorney-client privilege . . . ."). As to Roseberry-Andrews' arguments, it is not clear what "termination" and "EEOC disclosure" she is referencing. But in any event, the attorney-client privilege "is not limited to communications made in the context of litigation or even a specific dispute." *Sea Shepherd Conservation Soc'y v. IRS*, 89 F. Supp. 3d 81, 103 (D.D.C. 2015) (quoting *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 862 (D.C. Cir. 1980)).

b.      **Attorney Work Product**

"Courts have long recognized that materials prepared by one's attorney in anticipation of litigation are generally privileged from discovery by one's adversary." *NACDL*, 844 F.3d at 250 (citing *Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947)); *see also* Fed. R. Civ. P. 26(b)(3). "The doctrine protects both 'factual and deliberative' matters, because 'the risk is apparent that an attorney's discussion of factual matters may reveal his or her tactical [or] strategic thoughts.'" *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 65 (D.D.C. 2014) (quoting *Shapiro v. DOJ*, 969 F. Supp. 2d 18, 28 (D.D.C. 2013)), *aff'd per curiam*, No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015). But "[n]ot every document created by a government lawyer . . . qualifies for

the privilege (and thus, the exemption)." *NACDL*, 844 F.3d at 251. The D.C. Circuit has "long required a case-specific determination that a particular document in fact was prepared in anticipation of litigation before applying the privilege to government records." *Id.*

In ascertaining whether a document was prepared in anticipation of litigation, the D.C. Circuit has applied a "'because of' test, asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)). "For that standard to be met, the attorney who created the document must have 'had a subjective belief that litigation was a real possibility,' and that subjective belief must have been 'objectively reasonable.'" *Id.* (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).

Here, "[a]lthough Plaintiff does not mount any defense challenging Defendant's reliance on the [work product] privilege, the Court must nevertheless 'satisf[y] itself that the record and any undisputed facts justify granting summary judgment.'" *Wisdom v. U.S. Tr. Program*, 266 F. Supp. 3d 93, 107 (D.D.C. 2017) (third alteration in original) (quoting *McLean*, 843 F.3d at 507). Defendant asserts that it withheld communications and documents drafted to assist agency attorneys in litigating and managing cases (although it does not say what kind). Def.'s MSJ Br. at 7-8 (citing Tyrrell Decl. ¶ 29). While it would have been useful for Defendant to have provided additional information about precisely which cases these communications involve, the Court concludes that these withholdings were proper.

### c. Deliberative Process Privilege

"The deliberative process privilege protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Loving v. DOD*, 550 F.3d 32, 38 (D.C. Cir. 2008)

(quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n* ("*Klamath Water*"), 532 U.S. 1, 8 (2001)).  It "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government."  *Klamath Water*, 532 U.S. at 8-9 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)).

      "To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*."  *Pub. Emps. for Envtl. Responsibility v. EPA*, No. 14-cv-2056 (RC), 2017 WL 6333969, at *3 (D.D.C. Dec. 11, 2017) (quoting *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992)).  "The deliberative process privilege does not . . . protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations."  *Wallick v. Agric. Mktg. Serv.*, No. 16-cv-2063, 2017 WL 5592665, at *12 (D.D.C. Nov. 20, 2017) (citing *NLRB*, 421 U.S. at 150-54).  "For the deliberative process privilege to apply, a court must first determine whether the withheld materials are both 'predecisional' and 'deliberative.'"  *100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115, 150 (D.D.C. 2017) (quoting *Access Reports v. DOJ*, 926 F.2d 1192, 1194 (D.C. Cir. 1991)).  "[A] document [is] predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process."  *Worldnetdaily.com, Inc. v. DOJ*, 215 F. Supp. 3d 81, 83-84 (D.D.C. 2016) (alterations in original) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)) (internal quotation marks omitted).  "[W]hen claiming the deliberative process privilege, the agency must, at the very least, explain in its *Vaughn* Indices and/or declarations, for each contested document

withheld in part or in full, (1) what deliberative process is involved, (2) the role played by the documents in issue in the course of that process, and (3) the nature of the decisionmaking authority vested in the office or person issuing the disputed document[s], and the positions in the chain of command of the parties to the documents." *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 147 (D.D.C. 2017) (second alteration in original) (citations and internal quotation marks omitted).

Here, Defendant withheld discussions regarding Roseberry-Andrews' workplace grievances and the application of ICE policies to potential personnel actions under the deliberative process privilege. Def.'s MSJ Br. at 9. It also withheld draft documents regarding, for instance, how to respond to Roseberry-Andrews' complaint. *Id.*; *see, e.g.*, *Vaughn* Index at 7-10. In response, Roseberry-Andrews points to certain "officer's notes" that in her view should not have been withheld under the deliberative process privilege; she asserts that there are "facts" in those notes that can be disclosed. Pl.'s Cross-Mot. Br. at 8-9. It is unclear to what "notes" Roseberry-Andrews refers here, although it appears this argument may have been lifted from a brief in another case.[8] Nevertheless, upon review of DHS's *Vaughn* Index, the Court is satisfied that the agency's withholdings under the deliberative process privilege were proper. *See, e.g.*, *Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 208 (D.C. Cir. 1990) (deliberative process privilege covers predecisional documents regarding personnel actions); *Nat'l Sec. Counselors v. CIA*, 206 F. Supp. 3d 241, 278 (D.D.C. 2016) ("Judges on this

---

[8] Defendant argues that Roseberry-Andrews' failure to respond to its arguments in support of its application of the deliberative process privilege means that she has "conceded" the issue. *See* Def.'s Reply at 2-3 (citing *Hopkins v. Women's Div., General Bd. of Global Ministries,* 284 F. Supp. 2d 15, 25 (D.D.C. 2003)). But a *pro se* plaintiff's failure to respond to an argument does not automatically relieve the government of satisfying its burden on summary judgment. *See, e.g.*, *Wisdom*, 266 F. Supp. 3d at 107; *MacLeod*, 2017 WL 4220398, at *8.

Court have repeatedly held that drafts may be withheld under Exemption 5 where the withholding agency carries its normal burden of demonstrating that withheld materials are both predecisional and deliberative.").

### 2. Exemption 6

Exemption 6 provides that agencies may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).[9]

Courts "follow a two-step process when considering withholdings or redactions under Exemption 6." *AILA*, 830 F.3d at 673. First, they "determine whether the [records] are personnel, medical, or 'similar' files covered by Exemption 6." *Id.* (alteration in original) (quoting *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008)). "The Supreme Court has interpreted the term 'similar files' broadly so as 'to cover detailed Government records on an individual which can be identified as applying to that individual.'" *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 264 (D.D.C. 2014) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)).

"Second, if . . . the records are covered by the exemption, [a court] 'determine[s] whether their disclosure would constitute a clearly unwarranted invasion of personal privacy.'" *AILA*,

---

[9] Defendant notes that "[a]lthough all withholdings [on its *Vaughn* Index] are properly marked with (b)(6), not all withholdings marked (b)(6) are also marked with (b)(7)(C)." *Vaughn* Index at 2. Thus, the Court will evaluate DHS's withholdings under Exemption 6, even though courts will often evaluate Exemption 7(C) in lieu of Exemption 6. *See Citizens for Responsibility & Ethics in Washington v. DOJ*, 854 F.3d 675, 681 (D.C. Cir. 2017) ("When information is claimed to be exempt from disclosure under both provisions, courts 'focus . . . on Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material.'") (quoting *Citizens for Responsibility and Ethics in Washington v. DOJ* ("*CREW II*"), 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014)).

830 F.3d at 673 (quoting *Multi Ag Media LLC*, 515 F.3d at 1228) (internal quotation marks omitted). This requires a court to "balance the public interest in disclosure against the interest Congress intended [Exemption 6] to protect." *Id.* (alteration in original) (quoting *DOD v. Fed. Labor Relations Auth.* ("*FLRA*"), 510 U.S. 487, 495 (1994)). To do so, a court "follow[s] another two-step process." *Id.* It must first determine that "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest," *id.* at 674 (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002)), and then, "if so, . . . weigh the privacy interest at stake 'against the public interest in the release of the records,'" *id.* (quoting *Nat'l Ass'n of Home Builders*, 309 F.3d at 33). Exemption 6 "does not categorically exempt individuals' identities . . . because the 'privacy interest at stake may vary depending on the context in which it is asserted.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006) (quoting *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996)). "[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the *operations or activities of the government*.'" *FLRA*, 510 U.S. at 495 (second alteration in original) (quoting *Reporters Comm. for Freedom of Press*, 489 U.S. at 775).

In this case, Defendant withheld "the names, telephone numbers, email addresses, work locations, and other personally identifiable information for non-leadership, lower-level ICE employees," as well as the "names[,] signatures, and home addresses for other individuals and third parties (such as family members and contractors)." Def.'s MSJ Br. at 11.

The Court concludes that Defendant's withholdings under Exemption 6 were proper. The Court agrees with Defendant that the information redacted "can be identified as applying to"

particular individuals. *Ayuda*, 70 F. Supp. 3d at 264. Moreover, individuals have a substantial

privacy interest in personal information such as their telephone numbers and addresses. *AILA*,

830 F.3d at 673. And releasing the personal information of third parties and "lower-level ICE

employees," Def.'s MSJ Br. at 14, does not "contribut[e] significantly to public understanding of

the operations or activities of the government." *FLRA*, 510 U.S. at 495 (emphasis omitted). The

Court's conclusion is in accord with other courts in this Circuit. *See, e.g.*, *Henderson v. DOJ*,

157 F. Supp. 3d 42, 51 (D.D.C. 2016) ("EOUSA properly withheld the third-party information

under Exemption 6."); *Conservation Force*, 66 F. Supp. 3d at 67 ("It has long been held that

personal data and information can be redacted from documents produced under the FOIA in the

interest of privacy.") (collecting cases).

Roseberry-Andrews' arguments to the contrary are unavailing. She argues that DHS's

redactions were not proper because the names of GS-14 and above employees are already public,

and the titles of third parties cannot be redacted. Pl.'s Cross-Mot. Br. at 11. But she does not

point to any specific instances where Defendant allegedly redacted the name of a GS-14

employee and, in any event, DHS represented that it only redacted the names of "non-leadership,

lower-level ICE employees," Def.'s MSJ Br. at 11. Roseberry-Andrews also cites no evidence

that Defendant redacted the titles of third parties or that such redactions, if they occurred, would

be improper.

### 3. Exemption 7

"Exemption 7 protects from disclosure 'records or information compiled for law

enforcement purposes,' but only to the extent that disclosure of such records would cause an

enumerated harm listed in Exemption 7's subsections." *Miller v. DOJ*, 872 F. Supp. 2d 12, 24

(D.D.C. 2012) (citing 5 U.S.C. § 552(b)(7)).

### a. Exemption 7 Threshold

"To fall within Exemption 7, documents must first meet a threshold requirement: that the records were 'compiled for law enforcement purposes.'" *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico* ("*PEER*"), 740 F.3d 195, 202-03 (D.C. Cir. 2014) (citing 5 U.S.C. § 552(b)(7)).

"Agencies classified as law enforcement agencies . . . receive deference to their assertion that documents were compiled for a law enforcement purpose." *100Reporters LLC*, 248 F. Supp. 3d at 159 (citing *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)). But "not every document compiled by a law enforcement agency is compiled for a law enforcement purpose." *Id.* Instead, "the agency's activity 'must be related to the enforcement of federal laws or to the maintenance of national security'" and "the nexus between the [activity] and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Pinson v. DOJ*, 202 F. Supp. 3d 86, 101-02 (D.D.C. 2016) (alteration in original) (quoting *Pratt*, 673 F.2d at 420-21). If the records at issue do not involve an ongoing law enforcement investigation, "materials may still meet the threshold requirement of Exemption 7 if they are akin to 'guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation.'" *Pinson v. DOJ*, 236 F. Supp. 3d 338, 365 (D.D.C. 2017) (quoting *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002)).

As an initial matter, this Court concludes, consistent with many other decisions in this Circuit, that ICE is a law enforcement agency. *See, e.g.*, *Am. Immigration Council v. DHS* ("*AIC*"), 950 F. Supp. 2d 221, 245 (D.D.C. 2013) ("As Defendants correctly note, ICE is an agency specializing in law enforcement, and, consequently, its decision to invoke Exemption 7(E) is entitled to a measure of deference."); *Barnard v. DHS*, 598 F. Supp. 2d 1, 15 (D.D.C.

2009) ("[T]here is no question that ICE . . . perform[s] law enforcement activities."). Thus,

Defendant's determination of whether records are compiled for law enforcement purposes

receives deference under *Pratt*.[10]

With these principles in mind, the Court turns to the records that DHS redacted or

withheld pursuant to Exemption 7.

### b.    Exemption 7(C)

"FOIA exempts from disclosure 'records or information compiled for law enforcement

purposes, but only to the extent that the production of such law enforcement records or

information . . . could reasonably be expected to constitute an unwarranted invasion of personal

privacy.'" *CREW II*, 746 F.3d at 1091 (quoting 5 U.S.C. § 552(b)(7)(C)).  If Defendant satisfies

the Exemption 7 threshold that the information being withheld was compiled "for law

enforcement purposes," the Court's "task, then, is 'to balance the [ ] privacy interest against the

public interest in disclosure.'" *Id.* (alteration in original) (quoting *Nat'l Archives & Records

Admin. v. Favish*, 541 U.S. 157, 171 (2004)).  "Although the balancing test is applied to both

Exemption 6 and 7(C), 'Exemption 7(C) is more protective of privacy than Exemption 6 and thus

establishes a lower bar for withholding material.'" *100Reporters LLC*, 248 F. Supp. 3d at 158-

---

[10] Defendant seems to suggest that any records created by a program office that provides support to ICE meet the Exemption 7 threshold.  *See* Def.'s MSJ Br. at 13 ("All of the ICE records that are the subject of withholdings under Exemption 7 in this case originate from offices that are responsible for management and administration functions in support of ICE's operations. . . .  As such, they are critical components of ICE's law enforcement mission and their records are subject to Exemption 7.").  The Court rejects such a blanket assertion.  *See Pinson*, 202 F. Supp. 3d at 101 n.1 (rejecting a similar argument as "erroneous" because "the *Pratt* test was articulated specifically for law enforcement agencies, and details two conditions that even law enforcement agencies must meet to pass the threshold with respect to particular documents").  Thus, the Court will evaluate whether each category of documents that Defendant seeks to withhold under Exemption 7 satisfies the threshold for this exemption.

59 (quoting *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015)) (internal quotation marks omitted).

Pursuant to Exemption 7(C), DHS withheld the names and personally identifiable information of ICE employees who "handle a myriad of tasks relating to the enforcement of federal immigration law." Tyrrell Decl. ¶ 39. Moreover, DHS asserts that "[i]f their identities are released, they could become targets of harassment" and "[t]here is no public interest to be served by releasing the identities or personal information of these government employees." *Id.* Consistent with other opinions in this Circuit, this Court agrees that this information was properly withheld under Exemption 7(C). *See, e.g.*, *Isiwele v. HHS*, 85 F. Supp. 3d 337, 359 (D.D.C. 2015) (finding agency properly redacted names of law enforcement personnel); *Gosen v. U.S. Citizenship & Immigration Servs.*, 75 F. Supp. 3d 279, 290 (D.D.C. 2014) ("Because these redactions do not appear to implicate any public interest at all, USCIS properly applied Exemption[] . . . 7(C)."); *Brown v. FBI*, 873 F. Supp. 2d 388, 404 (D.D.C. 2012) ("In light of the employees' privacy interests, the potential for violence, and the insubstantial public interest in the names of clerical employees, defendant properly withholds the names and identifying information of FBI [Special Agents] and support personnel.").

### c.     Exemption 7(E)

Exemption 7(E) authorizes the government to withhold records and documents if they were "compiled for law enforcement purposes," provided that their publication "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The "requirement that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'" *PEER*, 740 F.3d at 205 (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir.

2011)).  "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  *Gilman v. DHS*, 32 F. Supp. 3d 1, 18 (D.D.C. 2014) (alteration in original) (quoting *Blackwell*, 646 F.3d at 42).

Here, Defendant seeks to redact a handful of documents pursuant to Exemption 7(E) to withhold information about ICE databases, such as internal resource-location addresses and case numbers.  *See* Def.'s MSJ Br. at 14-15; *Vaughn* Index at 7, 14-15, 19.  According to DHS, this information can reveal "the type of activity under investigation, the location of a case or investigative effort, and the scope and size of an investigation."  Def.'s MSJ Br. at 15.  Moreover, it asserts that the information is "not widely known and its revelation may allow persons seeking to circumvent the law to take proactive steps to counter operational and investigative actions."  *Id.*

In response, Roseberry-Andrews argues that Exemption 7(E) is inapplicable because it only "applies to criminal investigations."  Pl.'s Cross-Mot. Br. at 11.  She also argues that Defendant "failed to show that releasing information about its databases would disclose investigative or prosecutorial techniques, procedures, or guidelines" or that harm "could reasonably be expected" from disclosure.  *Id.* at 12.

The Court agrees with Defendant that its withholdings under Exemption 7(E) were proper.  As an initial matter, Roseberry-Andrews is incorrect that Exemption 7(E) applies only to criminal investigations.  The term "law enforcement" in Exemption 7 "refers to the act of enforcing the law, both civil and criminal."  *PEER*, 740 F.3d at 203.  And it "entails more than just investigating and prosecuting individuals after a violation of the law."  *Id.*

The Court is also satisfied that the information DHS withheld pursuant to Exemption 7(E) was "compiled for law enforcement purposes." ICE is an agency located within DHS, which is responsible for "administration and enforcement of laws related to immigration and naturalization." Def.'s MSJ Br. at 12-13 (citing 8 U.S.C. § 1103). ICE uses databases to "assist . . . with deporting people who are unlawfully in the United States, to arrest those who violate federal immigration laws, and to track investigations and court proceedings of those apprehended." *Long v. ICE*, 149 F. Supp. 3d 39, 49 (D.D.C. 2015). The Court therefore concludes, particularly in light of the deference that Defendant receives under *Pratt*, that "the withheld portions of the record are 'related to the enforcement of federal laws'" and "based on information sufficient to support at least a colorable claim of its rationality." *Bayala v. DHS*, 264 F. Supp. 3d 165, 178-79 (D.D.C. 2017) (quoting *Pratt*, 673 F.2d at 420-21). The Court's conclusion is consistent with other decisions in this Circuit. *See, e.g.*, *id.* at 178-80 (authorizing DHS to withhold information about "electronic database systems"); *Isiwele*, 85 F. Supp. 3d at 360 ("[T]he Court finds that ICE properly redacted . . . database codes, case numbers, and numeric references . . . under FOIA 7(E)." (internal quotation mark omitted)); *Gosen*, 75 F. Supp. 3d at 290 (database information such as codes and descriptions of documents "is precisely the type[ ] of information contemplated by the exemption, and . . . properly is withheld under Exemption 7(E)" (alteration in original) (internal quotation marks omitted)).

The Court also agrees with DHS that the information withheld pursuant to Exemption 7(E) would disclose "techniques and procedures for law enforcement investigations." 5 U.S.C. § 552(b)(7)(E). Defendant explained that information it withheld can reveal information about the type, scope, and location of an investigation. Def.'s MSJ Br. at 14 (citing Tyrrell Decl. ¶ 39). Such information involves "techniques and procedures" for law enforcement because it reveals

how ICE organizes information regarding its investigations. And the fact that the redactions at issue are not related to an ongoing investigation is of no moment. *Tax Analysts*, 294 F.3d at 78.

The Court also concludes that these withholdings meet the "relatively low bar," *PEER*, 740 F.3d at 205, to establish that disclosure "could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E). Tyrrell's declaration explains that "[d]isclosure of these techniques and practices for navigating law enforcement databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ICE." Tyrrell Decl. ¶ 42. As other courts in this Circuit have found, that is sufficient to meet Exemption 7(E). *See Parker*, 238 F. Supp. 3d at 100 ("The Court agrees that disclosing this information could reasonably be expected to create a risk of circumvention by revealing how ICE's databases work and rendering them more vulnerable to manipulation."); *Abdelfattah v. ICE*, 851 F. Supp. 2d 141, 145 (D.D.C. 2012) (permitting withholding of "program codes . . . and internal instructions" by ICE under Exemption 7(E)). The Court thus upholds Defendant's redactions under Exemption 7(E).

For the foregoing reasons, on the record currently before the Court, the Court grants Defendant's motion for summary judgment as it relates to its withholdings under FOIA, and denies Roseberry-Andrews' cross-motion on this issue.

### D. Segregability

FOIA requires that an agency provide "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b), "unless the exempt portions are 'inextricably intertwined with exempt portions,'" *Johnson*, 310 F.3d at 776 (quoting *Mead Data*, 566 F.2d at 260). "The agency is 'entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material,' but that does not excuse the agency from carrying its evidentiary burden to fully explain its decisions on segregability,"

*100Reporters LLC*, 248 F. Supp. 3d at 165 (quoting *Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013) (alteration in original)).  Indeed, the agency "must . . . provide descriptions of excerpts deemed to be non-segregable, with explanations as to these decisions."  *AIC*, 950 F. Supp. 2d at 248.

Here, Roseberry-Andrews baldly asserts that DHS failed to "[c]onduct a segregated line by line review of the information withheld."  Pl.'s Cross-Mot. Br. at 10.  Tyrrell asserts in equally conclusory fashion that he "reviewed each record line-by-line to identify information exempt from disclosure," and that any records released in part were "correctly segregated and non-exempt portions were released."  Tyrrell Decl. ¶¶ 44-45.  Ultimately, the Court denies Defendant's motion for summary judgment on the question of segregability because it is unclear on the record before the Court whether Defendant withheld any information on the grounds that it was non-segregable (and, if so, what explanation it would offer to justify such withholdings).  The Court notes that similar attestations have been met with skepticism by other courts in this Circuit.  *See, e.g.*, *AIC*, 950 F. Supp. 2d at 248 (similar ICE attestation "will not suffice to discharge [the agency's] burden").  If Defendant has withheld information as non-segregable, it should, in any future motion for summary judgment, clearly identify that information and "provide the reasons behind [its] conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."  *Id.* (quoting *Mead Data*, 566 F.2d at 261).

**IV. Conclusion and Order**

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion for summary judgment (ECF No. 22) is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE**. The Court will permit Defendant to file a renewed motion for summary judgment within 60 days explaining how it conducted an adequate search—whether by conducting additional searches or providing additional information about the searches already conducted—and setting forth whether it withheld any non-segregable information and why. The Court will also **RESERVE JUDGMENT IN PART** on and **DENY IN PART** Roseberry-Andrews' cross-motion for summary judgment (ECF No. 24).

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 13, 2018